**In re Anonymous No. 48 D.B. 93**

Disciplinary Board Docket no. 48 D.B. 93

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

KERNS, *Member,* March 28, 1995—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On February 19, 1993, Office of Disciplinary Counsel, petitioner, filed a petition for emergency interim suspension with the Supreme Court of Pennsylvania, pursuant to Rule 208(f)(1), Pa.R.D.E. Petitioner sought respondent's immediate suspension based on allegations of egregious conduct in violation of Rules of Professional Conduct 3.1, 3.3(a)(1), 8.4(c), and 8.4(d). Thereafter, respondent filed a document captioned "respondent's answer *opposing* petition for emergency interim suspension on the respondent to show cause." (emphasis in original) On March 24, 1993, the Supreme Court issued an order and rule to show cause upon respondent why he should not be placed on temporary suspension pursuant to Rule 208(f)(1), Pa.R.D.E. Respondent filed "respondent's supplemental answer *opposing* petition for emergency interim suspension under Rule 208(f)(1), Pa.R.D.E. and respondent's showing of cause in reply to rule to show cause." (emphasis in original) By order dated June 18, 1993, the rule to show cause issued upon respondent was made absolute and respondent was placed on temporary suspension until further definitive action by the court.

On June 24, 1993 respondent filed an application to dissolve or to modify temporary emergency suspension with the Supreme Court and petitioner filed a reply thereto. By order of the Disciplinary Board dated June 25, 1993 Board Member [A] was designated to preside over a hearing to consider respondent's application. On July 2, 1993 a hearing was held regarding the application to dissolve. On July 8, 1993, Board Member [A] forwarded his recommendation to the Supreme Court recommending that the order placing respondent on temporary suspension not be dissolved or modified. By order dated July 29, 1993, the Supreme Court denied respondent's application to dissolve or modify temporary emergency suspension and directed that the proceedings be expedited.

On July 20, 1993, petitioner filed a petition for discipline against respondent. Respondent, through counsel, filed a "counter petition" on August 9, 1993.

On August 12, 1993, a Special Hearing Committee comprised of [    ], Esquire, [    ], Esquire and [    ], Esquire, was appointed to hear this matter. By letter dated August 24, 1993, the secretary of the Disciplinary Board advised petitioner and respondent that two members of the Special Hearing Committee could not participate, and they were being replaced by [    ], Esquire and [    ], Esquire. By notice dated August 24, 1993, the matter was scheduled for accelerated disciplinary hearing for September 22 and 23, 1993 before Special Hearing Committee comprised of [    ], Esquire, [    ], Esquire and [    ], Esquire.

A disciplinary hearing was held on September 22 and 23, 1993. At the September 22 disciplinary hearing, it was determined that Member [    ] could not attend. The hearing was then held before a quorum of two

members (pursuant to section 93.82, Disciplinary Board Rules) consisting of Chair [     ] and Member [     ].

At the September 22, 1993 hearing, respondent was not present but was represented by [B]. It was argued at that time that since [B] assumed voluntary inactive status in August 1993, he was prohibited from practicing law and, therefore, could not represent respondent. The Special Hearing Committee determined that [B], because of his inactive status, was precluded from representing respondent and thus was dismissed from the hearing. The two day hearing was then held, at which time respondent did not appear, nor was he represented by counsel.

At the conclusion of the hearing, petitioner was directed by Chair [     ] to contact respondent with regard to various witnesses that may be called on respondent's behalf, of which petitioner received notice by written communication from respondent's wife. Respondent was requested to submit a written proffer as to each of the witnesses within 21 days. No response was received.

On September 27, 1994, the Special Hearing Committee filed its report and recommended that respondent be suspended from the practice of law for a period of three years. The committee further recommended that in the event that respondent initiates a request for reinstatement, and if such reinstatement is granted, the respondent be placed on probation for a period of one year with a practice monitor assigned to review the work of respondent every 60 days and submit reports to the Disciplinary Board.

On October 17, 1994, respondent filed a brief on exceptions and requested oral argument. Petitioner filed a brief opposing exceptions on November 11, 1994.

On December 15, 1994 oral argument was heard before a panel of the board.

The matter was adjudicated at the December 16, 1994 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## II. FINDINGS OF FACT

(1) Petitioner, Office of Disciplinary Counsel, whose principal office is located at Suite 400, Union Trust Building, 501 Grant Street, Pittsburgh, PA, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent [    ] was born in 1946, admitted to practice law in the Commonwealth of Pennsylvania in 1982, and attorney registration lists his mailing address as [    ].

(3) By order dated June 18, 1993, respondent was placed on temporary suspension pursuant to Rule 208(f)(1), Pa.R.D.E. (PE 119.)

### CHARGE I

*[C] v. [respondent]*

(4) Respondent and his wife, [D], were the defendants in a civil matter in the Court of Common Pleas of [    ] County, captioned *[    ] and [    ] [C] v. [respondent] and [D],* at no. [    ] of 1991.

(5) Respondent and his wife entered into a one year lease in about September 1990, with [    ] and [    ] [C], to rent the [C's] home located at [    ].

(6) At that time, the [C] had left the [    ] area and taken residence in [    ].

(7) Subsequently, the [C] sought eviction of respondent and his wife for failure to pay rent, expiration of the lease on its terms, etc.

(8) The [C], through their attorney, [E], Esquire, of [    ], filed a landlord/tenant complaint on about September 26, 1991, before District Magistrate [F].

(9) On about October 18, 1991, Magistrate [F] found that respondent should pay back rent and that the lease would continue on a month-to-month basis.

(10) Respondent filed an appeal of the magistrate's decision resulting in a complaint being filed by the [C] on about November 18, 1991.

(11) Thereafter, respondent filed preliminary objections, alleging therein that the [C] had given false testimony before the magistrate, as they had received and negotiated rent checks from respondent.

"(a) When respondent filed these preliminary objections, it contained false assertions therein, inter alia, that the [C] had received and negotiated rent checks.

"(b) Rather, respondent deposited or caused to be deposited two checks designated as rent payments into the [C's] local [    ] account, without the [C's] knowledge."

(12) On about January 9, 1992, an arbitration hearing was held, which respondent did not attend. An award was entered for the [C] in the amount of $7,400 for rent.

(13) On about February 7, 1992, respondent appealed the arbitration decision and requested a jury trial.

(14) By order dated February 11, 1992, trial was set for March 23, 1992.

(15) Meanwhile, after the scheduling of the March 23, 1992, trial on the eviction action, the [C] filed a motion to compel escrow payments on about February 29, 1992.

(16) By order dated March 11, 1992, a rule was issued on respondent to show cause why escrow payments for rent due should not be required. The rule was returnable March 17, 1992.

(17) On about March 10, 1992, without timely notice to the state court, the [C] or Attorney [E], respondent filed a petition for removal in the U.S. District Court for the [　] District of Pennsylvania, at [　]. Respondent's basis for removal was diversity and subject matter jurisdiction based on discrimination.

(18) By order dated March 17, 1992, the state court issued an order discharging the rule due to the removal of the case to the federal court.

(19) On about March 18, 1992, the [　] filed a motion to remand the case to the state court and for sanctions pursuant to Rule 11, Federal Rules of Civil Procedure.

(20) On about April 21, 1992, United States Magistrate [G] (U.S. Magistrate [G], filed his report and recommendation. In U.S. Magistrate [G's] report and recommendation:

"(a) He found that, even if there was a valid federal claim, based on respondent's assertion that removal was proper since one of the basis for the [C's] attempt to evict him was familial discrimination, the notice of removal was not filed timely. Further, the federal claim of respondent was in the nature of a defense rather than a cause of action, for which removal was not justified.

"(b) He found that, respondent's diversity jurisdiction claim was not filed timely by respondent.

"(c) No. Rule 11 sanctions were imposed, as Magistrate [G] did not find sufficient indications of bad faith." (N.T., Vol. I, 74; PE 13.)

(21) By memorandum order dated May 27, 1992, United States District Court Judge [H] (U.S. District

Court Judge [H]) adopted the report of U.S. Magistrate [G] and the case was remanded to state court.

(22) After remand to the state court in the matter at no. [    ] of 1991:

"(a) By a June 3, 1992 order, the [C] were granted inspection of the leasehold premises, to take place on June 6, 1992. (N.T., Vol. I, 77-78; PE 15.)

"(b) Respondent did not permit the inspection of the premises on June 6, 1992." (N.T., Vol. I, 78, 174.)

(23) On about July 9, 1992, the [C] filed a motion to place the case on the next available trial list, and a motion for sanctions for failure to allow the June inspection. (N.T., Vol. I, 79-80; PE 16, 17.)

"(a) These motions were to be presented to the state court on July 14, 1992. (N.T., Vol. I, 80.)

"(b) By order of court dated July 14, 1992, a rule was issued on respondent why he should not be held in contempt for not permitting the June 6 inspection and why he should not pay monetary sanction to the [C]. (N.T., Vol. I, 80; PE 18.)

"(c) The rule was returnable July 21, 1992." (N.T., Vol. I, 80; PE 18.)

(24) Meanwhile, on about July 13, 1992, respondent filed a second notice of removal of the case from the state court to the U.S. District Court for the [    ] District of Pennsylvania at [    ], based again on diversity.

(25) On about July 22, 1992, the [C] filed a motion for remand and award of sanctions, and a later motion to compel inspection of the property.

(26) On about September 25, 1992, U.S. Magistrate [G] issued his report and recommendation recommending remand to the state court. In his report and recommendation, Magistrate [G]:

"(a) Stated that, as before, respondent's removal based on diversity was time barred.

"(b) Allowed 10 days for objections." (N.T., Vol. I, 98; PE 25.)

(27) Respondent filed objections to U.S. Magistrate [G's] report and recommendation.

(28) On November 3, 1992, U.S. Magistrate [G] filed his report and recommendation recommending sanctions against respondent in the amount of $2,000.

"(a) The report outlined the various actions by respondent in filing motions at the very end of the deadlines and in placing procedural hurdles and roadblocks before the [C].

"(b) The report also indicated that not only did respondent know the second removal was improper, but Magistrate [G] was 'compelled to conclude it was also undertaken for improper motive.'

"(c) The report noted that when respondent signed the pleading which violated Rule 11, F.R.C.P., not only was he a party, but he was also an attorney." (N.T., Vol. I, 99-100; PE 27.)

(29) On November 9, 1992, U.S. Magistrate [G] entered an order granting inspection of the [C] property on November 10, 1992.

(30) While that November 10, 1992 inspection was taking place, respondent served or caused to be served a writ upon the [C], which respondent had filed in the State of [  ] Supreme Court, naming the [C] and numerous other people as defendants.

"(a) One of the defendants was a prospective purchaser of the home, inspecting the property on November 10, 1992.

"(b) The writ sought $60 million from the defendants.

"(c) The [C] were forced to retain counsel to defend this action in [  ].

"(d) That matter has been resolved without further action against the [C]." (N.T., Vol. I, 143-44, 179; PE 118.)

(31) On about November 20, 1992, U.S. District Court Judge [H] entered an order adopting the report and recommendation of U.S. Magistrate [G] and issuing

sanctions in the total amount of $2,000 against respondent and his wife, to be paid to the [C]. The sanctions were characterized as $1,000 to be considered as an award of costs and fees and $1,000 as an additional sanction.

(32) By memorandum order dated December 2, 1992, the motion to remand was granted.

(33) On January 14, 1993, respondent filed a notice of appeal to the Third Circuit Court of Appeals.

(34) By order dated March 12, 1993, the United States Court of Appeals dismissed respondent's case for failure to timely prosecute.

(35) Meanwhile, after the second removal action ([   ]) was remanded to the state court, a jury trial was scheduled for January 13, 1993 in the state court matter at [   ] of 1991.

(36) The trial was postponed until January 20, 1993, upon request by the [C].

(37) On January 20, 1993, respondent did not appear for the scheduled trial, asserting, through his wife, that he had been hospitalized.

(38) Thereafter, despite requests from the court, respondent did not appear on January 21 or January 22, 1993.

(39) On January 22, 1993, Judge [I] of the Court of Common Pleas of [   ] County entered a non-jury verdict for the [C] and an order awarding the [C] damages in the amount of $38,500 and immediate possession of the premises.

(40) On about January 27, 1993, respondent filed a motion for the recusal of Judge [I], alleging therein that Judge [I] was biased in favor of the [C] and against respondent. Respondent asserted that Judge [I] teaches at the University of [   ], where respondent was once employed, and with which he is engaged in litigation, and that somehow Judge [I] would benefit from ruling against respondent.

(41) On about January 29, 1993, respondent also filed a motion for post-trial relief, etc.

"(a) Therein, respondent asserted, among other things, that a second eviction action instituted against him by the [C] had been non prossed in the state court. (N.T., Vol. I, 134-35; PE 56.)

"(b) Respondent failed to relate that the non pros judgment had been stricken on January 15, 1993." (N.T., Vol. I, 135-36; PE 57.)

(42) By order of court dated February 22, 1993, respondent's motion for recusal of Judge [I] and his motion for post-trial relief were denied.

(43) On about March 16, 1993, respondent filed an appeal in this matter in the Superior Court of Pennsylvania at [   ].

(44) The Superior Court appeal was pending at the time of the disciplinary hearing.

(45) On about June 21, 1993, respondent filed defendants' motion for reconsideration from opinion and order of Honorable [I] entered on June 9, 1993.

"(a) Judge [I's] June 9, 1993 opinion and order denied respondent's post-trial motions on various grounds. (N.T., Vol. II, 78-79; PE 42.)

"(b) In this motion for reconsideration, respondent stated that recusal of Judge [I] 'may be mandated, also, by the fact Judge [I] is believed to have incurred a $350,000 gambling debt which the [   ] County Sheriff's Office 'paid,' according to information defendants received from [J], their attorneys in companion cases.' " (N.T., Vol. II, 79-80; PE 43.)

(46) Respondent's motion for reconsideration was denied by order dated June 28, 1993.

(47) The [C] are attempting to ascertain assets of respondent to satisfy this judgment.

(48) Meanwhile, on about October 22, 1992, the [C] filed a second eviction action against respondent before Magistrate [F].

(49) Respondent did not appear at the November 9, 1992 hearing and judgment was entered in favor of the [C].

(50) On November 9, 1992, respondent filed a notice of removal to the U.S. District Court for the [ ] District of Pennsylvania at [ ].

(51) The [C] filed a motion for remand and a motion for sanctions, among other motions.

(52) On February 4, 1993, U.S. Magistrate [G] issued his report and recommendation which:

"(a) Detailed the history of this litigation, beginning with the first removal on March 10, 1992;

"(b) Detailed respondent's dilatory tactics, including respondent's alleged inability to attend various hearings due to illness;

"(c) Recommended remand to the state court, as it did twice before, noting no federal question or diversity;

"(d) Detailed the numerous reasons for granting sanctions including but not limited to, respondent's baseless removals from the state court, respondent's apparent motivation to harass the [C] and delay the state court adjudication, and respondent's failure to abide by the court's request to provide medical proof of his alleged disability; and,

"(e) Recommended sanctions to be awarded to the [C] and against respondent and his wife, in the total amount of $5,835.75, based on Rule 11, F.R.C.P, 28 U.S.C. §1447(c) and 28 U.S.C. §1927." (N.T., Vol. I, 130-32; PE 49.)

(53) U.S. Magistrate [G's] report and recommendation was adopted by order of U.S. District Court Judge [H] on April 14, 1993.

(54) On about May 14, 1993, respondent appealed this matter to the United States Court of Appeals.

(55) The Court of Appeals dismissed respondent's appeal, on about June 23, 1993, for failure to timely prosecute.

(56) The [C] have sought action to have respondent pay the sanctions and to hold respondent in contempt in the federal actions at [    ] and [    ].

(57) Meanwhile, on about December 9, 1992, after removing this matter to federal court, respondent filed an appeal in the Court of Common Pleas of [    ] County at L.T. [    ] of 1992, from the decision of Magistrate [F] in favor of the [C], in this second eviction action.

(58) On January 11, 1993, a judgment of non pros was entered against the [C] for failure to file a complaint.

(59) The judgment of non pros was stricken on January 15, 1993.

(60) On about February 16, 1993, respondent filed an appeal with the Pennsylvania Superior Court at [    ], from the January 15 order.

(61) This Superior Court appeal was quashed.

(62) On about March 30, 1993, Judge [K], of the Court of Common Pleas of [    ] County issued a memorandum opinion.

"(a) Judge [K] noted that he had stricken the non pros because the matter had been removed to federal court at the time the judgment was entered.

"(b) Judge [K] noted that respondent's recourse was a motion for reconsideration." (N.T., Vol I, 140; PE 58.)

(63) Throughout this matter, respondent and/or his wife also filed complaints against the [C] with, U.S. Department of Housing and Urban Development, the Pennsylvania Human Relations Commission and the [    ] County Health Department.

(64) Respondent and his family were evicted from the [C] property on April 12, 1993.

## CHARGE II

*[Respondent] v. University of [L] et al.*

(65) On about August 5, 1990, respondent filed a writ of summons in a matter captioned *[Respondent]*

*v. University of [L], [M], [N], [O] and [P],* in the Court of Common Pleas of [   ] County at no. [   ].

(66) Thereafter, respondent began sending sets of interrogatories to various defendants by various means, including inter-campus mail.

"(a) The interrogatories reflected [Q], Esquire, as counsel for respondent.

"(b) The interrogatories were not signed by any individual.

"(c) Some of the questions posed in the interrogatories were not of the type usually permitted, and in fact raised a question of respondent's good faith in propounding them." (N.T., Vol. II 8-11; PE 64(a)-(f).)

(67) When defendants' counsel, [R], Esquire, of [   ] became aware of the interrogatories, he contacted Attorney [Q].

"(a) Attorney [R] advised Attorney [Q] that the interrogatories and service of them did not comply with the Rules of Civil Procedure.

"(b) Attorney [Q] advised Attorney [R] that he knew nothing about the interrogatories and that he had petitioned to withdraw his appearance on behalf of respondent." (N.T., Vol. II, 11-12; PE 70, exhs. A, B, C; PE 65.)

(68) After motion by the defendants for respondent to file a complaint, on about January 29, 1991, respondent filed a 62 paragraph, multiple cause of action complaint against defendants.

(69) After preliminary objections, on about May 28, 1991, respondent filed a 103 paragraph, multiple cause of action amended complaint in regard to the same matter, raising for the first time, a federal cause of action.

(70) On about June 18, 1991, the defendants in this matter filed a notice of removal from the Court of Common Pleas of [   ] County to the U.S. District Court for the [   ] District of Pennsylvania at [   ].

As a result, this matter was removed from state court to the federal court system.

(71) On about October 24, 1991, respondent filed a "motion to compel discovery" regarding the interrogatories. (N.T., Vol. II, 18-19; PE 69.)

(72) Defendants filed a response, on about October 29, 1991, asserting, inter alia, that the interrogatories did not comply with the Rules of Civil Procedure.

(73) These interrogatories were one of several subjects discussed at a status conference on October 29, 1991, before United States District Court Judge [S] (U.S. District Court Judge [S]). At that time, U.S. District Court Judge [S] stated that his review of the interrogatories indicated that he would not allow them.

(74) Respondent has made misrepresentations to the federal court in the various pleadings filed by him.

(75) In a "motion for partial summary judgment" filed by respondent on about July 20, 1992, respondent asserted that he served upon counsel for the defendants in July 1991, a request for admissions pursuant to Rule 36, F.R.C.P. Respondent further asserted that the defendants failed to timely or properly deny these requests for admissions.

"(a) However, respondent had been previously advised by a letter dated November 19, 1991 from Attorney [R] that no such request for admissions had been received.

"(b) In defendants' response to respondent's motion for partial summary judgment, respondent was again advised that no request for admissions had been received by defendants." (N.T., Vol. II, 22-23; PE 72, 73.)

(76) Respondent also filed, on about August 25, 1992, an "affidavit of plaintiff [respondent] in opposition to defendants' motion for summary judgment" in this matter. Therein, respondent asserted that on about July 18, 1991, defendants' counsel received, by certified mail, the "plaintiff's request to make certain undenied facts

part of the record as *admissions* pursuant to Rules 26(b) and 36, F.R.C.P."

"(a) However, respondent had asserted in the motion for partial summary judgment that he had only served the request for admissions upon the defendants in July of 1991.

"(i) The requests for admissions reflected an illegible date in July 1991, as being served upon defendants.

"(ii) Further, the service was reflected as being by first class mail, not certified mail.

"(b) In this subsequent affidavit, respondent was asserting that not only had he served the request for admissions on July 18, 1991 but that on that *same day,* 30 days had elapsed and he was then requesting that they be made part of record as admissions for failure to respond.

"(c) Respondent had been made aware by Attorney [R] that the request for admissions had never been received." (N.T., Vol. II, 23-32; PE 73, 74, 75 (at yellow tab).)

(77) On about August 26, 1992, respondent also filed "plaintiff's *opposition* to defendants' statement of 'undisputed' facts." Therein, respondent stated that the defendants had attempted to mislead the court.

"(a) Respondent asserted that Judge [T], of the Court of Common Pleas of [    ] County, had expressly ruled that respondent had a *'cause of action for professional negligence . . . .'*

"(b) Respondent's characterization of Judge [T's] order was misleading.

"(c) By order dated April 26, 1991, Judge [T] dismissed certain counts of respondent's complaint with leave to amend and indicated that respondent 'should allege a contract taking plaintiff's [respondent's] employment out of the at-will category, being performed in a negligent manner.' " (N.T., Vol. II, 34-36; PE 76, 67.)

(78) Subsequently, on about October 21, 1992, respondent filed "plaintiff's application for an order compelling defendant University of [L] to continue plaintiff's salary, according to the court's inclination announced at a status conference in October 1991."

"(a) Therein, respondent stated that at a status conference held on October 29, 1991 before U.S. District Court Judge [S], the judge had remarked that he was inclined to continue respondent's salary and benefits as a full professor at the University of [L].

"(b) Respondent's representation to the court was false.

"(c) The transcript of the October 29, 1991, status conference does not reflect any inclination, expressed or otherwise, by Judge [S] in regard to the continuation of respondent's salary and benefits." (N.T., Vol. II, 37-38; PE 77, 71(a), (b).)

(79) On about December 4, 1992, respondent filed "plaintiff's motion to transfer this action to another judicial district because of the appearance of racketeering from the bench." Therein, respondent accused U.S. District Court Judge [S], of, inter alia, discussing respondent's case ex parte with other counsel from defendants' law firm, and during an April 1992 status conference, of extending discovery, forbidding respondent from deposing certain witnesses and limiting the number of respondent's deposition witnesses.

"(a) Defendants denied the ex parte accusation, but admitted they did speak with U.S. District Court Judge [S].

"(b) Review of the April 1992 status conference, reveals agreement by respondent to limiting the deposition witnesses.

"(c) This motion was set for hearing on January 29, 1993.

"(d) However, respondent, through his wife, advised that he would not be able to be present because of

a recurring back problem. The hearing was continued until March 12, 1993." (N.T., Vol. II, 42-49; PE 78, 79, 80(a), (b), 81, 82, 83.)

(80) On about December 21, 1992, defendants filed a "motion for sanctions and dismissal," against respondent.

"(a) Therein, defendants enumerated various misrepresentations, as indicated above, made by respondent during the course of this action.

"(b) Defendants also enumerated other monetary sanctions that had been leveled against respondent in various other actions.

"(c) Defendants asserted that respondent's conduct in this litigation had been violative of Rule 11, F.R.C.P., and 28 U.S.C. §1927.

"(d) Further, defendants asserted that monetary sanctions had proven ineffective in deterring respondent's conduct to date and therefore asked for a dismissal of the outstanding action of *[Respondent] v. the University of [L] et al.,* pursuant to Rules 11 and 41(b), F.R.C.P." (N.T., Vol. II, 52-53; PE 86.)

(81) On March 12, 1993, a hearing was held before United States District Court Judge [U] regarding respondent's motion to transfer the case to another district because of the appearance of racketeering.

"(a) At that hearing, U.S. District Court Judge [U] stated that respondent and his counsel represented that they had no evidence to support an allegation that a member of the federal court had been improperly influenced by the University of [L].

"(b) U.S. District Court Judge [U] denied respondent's motion to transfer the matter to another judicial district by order dated March 16, 1993." (N.T., Vol. II, 50-52; PE 84, 85.)

(82) On about April 1, 1993, a hearing was held before U.S. District Court Judge [U] on the defendants' motion for sanctions and dismissal against respondent.

(83) This decision was still pending at the time of the disciplinary hearing.

### CHARGE III

### *[D] v. [V] Corp. et al.*

(84) On about July 24, 1987, respondent filed a suit on behalf of his wife, captioned *[D] v. [V] Corporation, t/d/b/a [   ], [   ] Corporation, [W] Insurance Company, [X] Inc. [Y], [Z] Inc., [AA] Corporation and [BB]*, in the United States District Court for the [   ] District of Pennsylvania at no. [   ].

"(a) The complaint contained 65 paragraphs and multiple causes of action arising from respondent's purchase and use of an automobile.

"(b) The complaint asserted jurisdiction based on diversity, stating that respondent's wife was a resident of [   ], and generally asserted the RICO statute. (N.T., Vol. II, 101-103; PE 89.)

(85) After proceedings in this matter, by order dated October 11, 1988, by United States District Court Judge [CC], the matter was dismissed." (N.T., Vol. II, 103-107; PE 90.)

(86) By memorandum opinion dated February 2, 1989, U.S. District Court Judge [CC] recited the events of this matter and addressed the defendants' request for sanctions.

"(a) The opinion noted that while the complaint alleged some type of a personal injury, the plaintiff, [D], denied being involved in either alleged accident.

"(b) The opinion noted that in answers to interrogatories filed on October 11, 1988, the plaintiff, [D], submitted that she lived in the Commonwealth of Pennsylvania at least since she purchased her home in 1977, with her husband, respondent.

"(c) The opinion also noted that respondent had filed a boilerplate RICO claim, and had not pursued it by following the appropriate federal requirements.

"(d) The opinion noted that the plaintiff, [D], submitted conflicting documents with regard to her citizenship for the diversity purposes and she signed each of them, with the exception of the complaint. The court found that the plaintiff had violated Rule 11, F.R.C.P., but that the appropriate sanction was dismissal of the action.

(e) With regard to respondent, the court noted that he conducted the litigation in 'willful bad faith since the filing of the complaint.' The court further noted that the respondent had 'failed to prosecute any claim asserted on behalf of plaintiff, failed to comply with the orders and rules of this court, failed to engage in discovery and conducting inquiry required by Rule 11 of the Federal Rules of Civil Procedure.' Thus, the court noted that it believed that Rule 11, F.R.C.P. and 28 U.S.C. §1927 provided authority to sanction respondent." (N.T., Vol. II, 107-110; PE 91.)

(87) Thereafter, by order of court dated February 23, 1989, the court entered judgment against respondent in the amount of $51,851.69, which represented the sum expended by defendants for fees and costs.

(88) On about September 14, 1989, respondent filed an appeal with the Third Circuit Court of Appeals in regard to this matter.

(89) By opinion decided April 3, 1990, the court of appeals affirmed the district court's denial of respondent's recusal motion but remanded the matter to the district court, vacating the order for sanctions, indicating that there was no specific determination as to whether the sanctions were under Rule 11, F.R.C.P. or under 28 U.S.C. §1927 and further, that there was no hearing demonstrating respondent's ability to pay.

(90) After remand from the court of appeals (remand proceedings), the defendants filed a motion for sanctions pursuant to Rule 11, F.R.C.P. and 28 U.S.C. §1927, against respondent. The sole issue to be decided after remand was the imposition of sanctions and respondent's ability to pay.

(91) Thereafter, by orders dated on about October 24 and November 15, 1990, all defendants *except* [X] entered into consent orders dismissing all claims and causes of action, with prejudice as between and among the parties.

(92) One defendant, [X], represented by [DD], Esquire, of [     ], pursued the sanctions against respondent and subsequently filed a motion for sanctions on about April 15, 1992 for failure of respondent to comply with the pre-trial procedures and orders of court in this remand proceeding.

(93) Specifically, pursuant to a February 20, 1992 order, a pre-trial stipulation was to have been prepared between the parties and filed by April 15, 1992.

(94) A hearing in regard to these sanctions was held on May 22, 1992.

(95) A memorandum opinion dated November 12, 1992, by U.S. District Court Judge [U] stated:

"(a) By court order dated February 20, 1992, the parties were required to file a pre-trial stipulation on or before April 15, 1992;

"(b) Despite the efforts of counsel for [X], respondent did not comply with the court order and attempted to have his young daughter communicate with counsel for [X];

"(c) Respondent testified that he had hand-delivered prior pre-trial stipulations, but that they had not been responded to by counsel for [X].

"(d) The court found as fact, that despite respondent's assertions to the contrary, respondent never mailed or

had hand-delivered to counsel for [X], a draft of his pre-trial stipulation; and,

"(e) The court found that respondent's testimony was not credible and that respondent had failed to comply with the pre-trial order of February 20, 1992." (N.T., Vol. II, 122-26, 127-30; PE 101.)

(96) By order of court dated November 12, 1992, U.S. District Court Judge [U] denied, without prejudice, defendants' motion for sanctions for failure to comply with procedures and directed respondent and Attorney [DD] to meet on November 18, 1992 for the purpose of filing a joint pre-trial stipulation. (N.T., Vol. II, 130; PE 101.)

(97) As a result, a pre-trial stipulation between Attorney [DD] and respondent was filed on about November 18, 1992. Some of the uncontested facts, to which respondent admitted, include, but are not limited to:

"(a) Prior to the filing of the original complaint in this matter, respondent 'quit-claimed' his interest in the automobile to his wife for 'jurisdictional purposes.'

"(b) Respondent's wife, the plaintiff in the matter, was not involved in the two accidents identified in the complaint.

"(c) Neither respondent nor plaintiff could articulate any facts to support a number of the allegations in the complaint.

"(d) Respondent and plaintiff refused or failed to produce documents requested of them.

"(e) Respondent and plaintiff failed to conduct discovery, file pre-trial statements, serve answers to interrogatories, etc." (N.T., Vol. II, 130-32; PE 102.)

(98) On about November 20, 1992, respondent and Attorney [DD], entered into a consent order and judgment, whereby judgment in regard to sanctions, in the amount $7,500, was entered against respondent, the matter was dismissed with prejudice, and, a settlement

agreement between [X] and respondent was attached and incorporated into the order. According to the settlement agreement, among other things, respondent is to make 48 monthly installments, in the amount of $100 for 12 months; $156.25 for 24 months; and, $212.55 for the remaining 12 months, to the attorney for [X]. (N.T., Vol. II, 132; PE 103.)

(99) Respondent has made only one payment, in January 1993, of $100.

## III. CONCLUSIONS OF LAW

The board finds that the respondent violated the following Rules of Professional Conduct:

R.P.C. 3.1—A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

R.P.C. 3.3(a)(1)—A lawyer shall not knowingly make a false statement of material fact or law to a tribunal.

R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

## IV. DISCUSSION

This is a somewhat unusual case because the actions which arose by which respondent violated the various rules of disciplinary conduct all related to cases in which either he or his wife were litigants. This in no way excuses respondent but, in fact, amplifies the egregious conduct of the respondent.

In *[C] v. [Respondent],* a landlord/tenant action which was begun against the respondent in or around Sep-

tember of 1991, the [C], plaintiffs, were consumed in a multitude of legal actions which caused them financial and emotional harm. When the [C] initiated their first complaint in the landlord/tenant action, respondent asserted that they had lied concerning receipt of rent payments when, in fact, respondent himself deposited rent payments into the [C's] [    ] account. Respondent filed an appeal from the magistrate's decision, then did not appear at the arbitration hearing, after which he filed an appeal from the arbitrator's award to the court of common pleas. Respondent then sought removal of the action from state court to federal jurisdiction. He filed the removal without notice to the state court or to opposing counsel.

After the matter was remanded to state court, respondent sought a second removal to federal court which was finally remanded to state court and sanctions were entered against respondent. The underlying basis of the sanctions was that the second removal was improper and undertaken for an improper motive. At no time during these actions did respondent make any payments for rent to the [C]. As a matter of fact, he filed an action in the [    ] Supreme Court claiming $60,000,000 in damages against the [C]. This was a wholly frivolous action.

After the second remand from federal court the trial which was scheduled was continued on several occasions at respondent's request. Finally, possession of the premises was granted to the [C] along with damages in the amount of $38,500. Respondent filed post-trial motions, claimed prejudice on the part of Judge [I] of the court of common pleas and asked him to recuse himself, and alleged as a basis the accusation that the judge had incurred a gambling debt that the sheriff's department had paid off on his behalf.

The second landlord/tenant action had to be started because the [C] felt respondent would try to argue that

his lease had in some way been extended. This second action was removed to federal court and, finally upon remand, sanctions against respondent were entered in the amount of $5,835.75. Respondent sought a judgment of non pros against the [C] in state court at this time, even though the state court had no jurisdiction. The judgment of non pros was stricken but respondent misrepresented the state of that non pros action in his motion for post-trial relief filed with the court of common pleas.

During this time, respondent pursued HUD actions against the [C], a federal discriminatory suit and a complaint with [   ] County Health Department, all of which were resolved in favor of the [C]. It is clear that throughout this case, respondent who was properly evicted, pursued every method and manner of dilatory and delaying tactics as well as misrepresentation concerning the [C] and members of the court.

In *[Respondent] v. University of [L] et al.,* an action was filed by the respondent against his former employer. The defendants in the action filed a motion for sanctions against respondent seeking dismissal because of respondent's various misrepresentations to the court. The misrepresentations include assertions that he had served counsel for the defendants a request for admissions despite the fact that he had been notified that no such request had been received. He attempted to assert to the court in an affidavit that not only had he served the request for admissions, but that the 30 days had lapsed and the request should be made part of the record for defendants' failure to respond. Respondent also misrepresented the content of an order of Judge [T] of the court of common pleas. Respondent misrepresented what occurred at the status conference before Judge [S] of the U.S. District Court of the [   ] District stating in a pleading that Judge [S] had ruled that he was inclined to continue respondent's salary when, in fact, no such decision was made by the court. Respondent

then filed a motion to have the action transferred to another judicial district, claiming racketeering from the bench in that Judge [S] had engaged in ex parte communications and asserting that he was forbidden from deposing certain witnesses. Respondent also forwarded improper interrogatories to the defendants.

Finally, in *[D] v. [V] Corp. et al.* respondent's wife was the plaintiff, and he alleged diversity of jurisdiction in a RICO action as basis for federal jurisdiction. Ultimately, respondent admitted that his wife was not the person involved in the civil suit and that he had "quitclaimed" his interest in the vehicle to her so as to name her as plaintiff, that she was not a resident of [    ] but rather a resident of Pennsylvania. Respondent entered into a consent order whereby judgment was entered against him in the amount of $7,500 representing sanctions for his actions in the civil matter.

On appeal, the third circuit remanded the action concerning sanctions, but respondent made misrepresentations concerning the pre-trial stipulation that was to be worked out between counsel. Upon the hearing on the remand action concerning sanctions, district court found that respondent's testimony was not credible. It was found that respondent failed to hand-deliver or mail a pre-trial stipulation, and failed to comply with the court's pre-trial order. Despite the consent order in which judgment was entered against respondent in the amount of $7,500, respondent has made only one payment in regard to these sanctions.

The primary purposes of attorney discipline is the protection of public interest and the maintenance of the integrity of the legal system. *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 1180 (1987).

In this case, the Hearing Committee made a recommendation of a three year suspension. However, after argument before a panel of the members of the board and a recommendation of that panel and after discussion

by the board, it was felt that this sanction was not severe enough.

This is not the type of situation that was dealt with in *In re Anonymous No. 77 D.B. 83,* 32 D.&C.3d 507 (1984) where an attorney received a private reprimand for filing under oath pleadings containing knowing misrepresentations of fact. In that case, the attorney was relatively young and only one incident was involved. Or in *In re Anonymous No. 31 D.B. 88,* 5 D.&C.4th 308 (1989) where an attorney was found to have made misrepresentations to the tribunal and engaged in conduct prejudicial to the administration of justice. In that case, the Hearing Committee recommended disbarment. The Disciplinary Board, which took into consideration the fact that the respondent was involved in a highly emotional divorce and was representing himself, recommended a four year suspension which was ordered by the court. See also, *In re Anonymous No. 69 D.B. 89,* 7 D.&C.4th 125 (1990) in which the instances which resulted in a three year suspension were not nearly as egregious long-term or harmful as they were in this case to the [C] who were forced to spend significant amounts of money and suffer long-term emotional distress based on respondent's actions.

This case more fits in line with and is even more egregious than in *Office of Disciplinary Counsel v. Holston,* 533 Pa. 78, 619 A.2d 1054 (1993) in which the respondent was disbarred from the practice of law for making false statements of material fact or law to a tribunal and engaging in dishonesty, fraud, deceit and misrepresentation. The respondent forged the divorce decree and presented it to the client.

It should be noted that respondent failed to appear at any of his disciplinary hearings. It is obvious that respondent pursued over a long period of time, a course of conduct by the pursuit of the frivolous actions which he brought as well as the entry of groundless defenses,

coupled with procedural tactics which led only to delay and obfuscate the administration of justice.

In this case, respondent was involved in various pieces of litigation continuing from 1987 through 1993 in which he made numerous misrepresentations to the court, made false statements and accusations concerning members of the bench, and misrepresented in various pleadings and statements made by the court. The actions of respondent herein show a callous disregard for the administration of justice and his misconduct warrants disbarment in order to safeguard public interest and maintain the integrity of the bar.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [    ], be disbarred. It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Board Member Witherel abstained.

Mr. Paris recused himself and left the meeting during the consideration and disposition of this matter.

## ORDER

Upon consideration of the report and recommendations of the disciplinary board dated March 28, 1995, and following oral argument, it is hereby ordered that [respondent] be and he is disbarred from the bar of this Commonwealth and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Cappy did not participate in the consideration or decision of this case.

Mr. Justice Montemuro is sitting by designation.